UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

836250
PHELAN HALLINAN DIAMOND & JONES, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for PHH MORTGAGE CORPORATION

In Re:

Josette M. Garrett
Readus D. Garrett

Case No:  17-21500 - ABA

Hearing Date: 07/21/2020 @ 10:00 AM

Judge:  Andrew B. Altenburg, Jr

Chapter:  13

# CERTIFICATION OF PARTICIPANT
## REGARDING MOTION FOR RELIEF

   I HEREBY CERTIFY that with respect to the copy of the captioned Motion for Relief submitted to the Court, the following conditions have been met:

(a) The Affiant has acknowledged the genuineness of the original signature;

(b) The original document was executed in completed form prior to facsimile transmission;

(c) The document or a copy with an original signature affixed to it will be obtained by the Participant within seven business days after the date the document or pleading with the facsimile signature was electronically filed with the Court; and

(d) In accordance with the Court's *Administrative Procedures for Filing, Signing, and Verifying Documents by Electronic Means* (collectively, the "Administrative Procedures"), at paragraph II C.2, the document containing the original signature will be maintained in paper form by the Participant for a period not less than seven years from the date of closure of the case or proceeding in which the document is filed; and that upon required the original document must be provided to other parties or the Court for review.

      /s/ Melanie Grimes
      Melanie Grimes, Esq.
      Phelan Hallinan Diamond & Jones, PC
      1617 JFK Boulevard, Suite 1400
      Philadelphia, PA 19103
      Tel: 856-813-5500 Ext. 46245
      Fax: 856-813-5501
      Email: Melanie.Grimes@phelanhallinan.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

836250
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for PHH MORTGAGE CORPORATION

| | |
|---|---|
| In Re:<br><br>Josette M. Garrett<br>Readus D. Garrett | Case No:  17-21500 - ABA<br><br>Hearing Date: 07/21/2020 @ 10:00 AM<br><br>Judge:  Andrew B. Altenburg, Jr<br><br>Chapter:  13 |

## STATEMENT AS TO WHY NO BRIEF IS NECESSARY

In accordance with D.N.J. LBR 9013-1(a)(3), it is respectfully submitted that no brief is

necessary in the court's consideration of this motion, as it does not involve complex issues of law.

Dated: May 11, 2020

/s/ Melanie Grimes
Melanie Grimes, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 46245
Fax: 856-813-5501
Email: Melanie.Grimes@phelanhallinan.com



**MORTGAGE**

PHH Mortgage Services
1 Mortgage Way
Mt. Laurel NJ 08054

Tel 877-688-7116
Fax 856-917-8003

# **IMPORTANT NOTICE**

Upon written request, PHH Mortgage Services will provide the following information regarding the subject loan:

- \* A copy of the payment history through the date the account was last less than 60 days past due.
- \* A copy of the note.
- \* If foreclosure has been commenced or a POC has been filed, copies of any assignments of mortgage or deed of trust required to demonstrate the right to foreclose on the borrower's note under applicable state laws.
- \* The name of the investor that holds the loan.

Requests for this information/documentation can be sent to us at the following address:

PHH Mortgage Services
Mailstop SBRP
PO Box 5469
Mt. Laurel, NJ 08054

This notice is being provided for informational and compliance purposes only. It is not an attempt to collect a debt.

PHH MORTGAGE CORPORATION, SERVICES THE LOAN ON THE PROPERTY REFERENCED IN THIS DOCUMENT. IN THE EVENT THE AUTOMATIC STAY IN THIS CASE IS MODIFIED, THIS CASE DISMISSES, AND/OR THE DEBTOR OBTAINS A DISCHARGE AND A FORECLOSURE ACTION IS COMMENCED ON THE MORTGAGED PROPERTY, THE FORECLOSURE WILL BE CONDUCTED IN THE NAME OF CREDITOR. CREDITOR, DIRECTLY OR THROUGH AN AGENT, HAS POSSESSION OF THE PROMISSORY NOTE. CREDITOR IS THE ORIGINAL MORTGAGEE OR BENEFICIARY OR THE ASSIGNEE OF THE MORTGAGE.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY CAMDEN
## DIVISION

IN RE:                                          CASE NO: 17-21500 ABA

**Josette M. Garrett**                          **Chapter 13**
**Readus D. Garrett**

### DEBTORS

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, Daniel Jean-Baptiste, declare under penalty of perjury as follows:

1.  I am employed as a ___Contract Management Coordinator___ of PHH MORTGAGE CORPORATION
    and am authorized to sign this Affidavit on behalf of PHH MORTGAGE
    CORPORATION (the "Movant"). This Affidavit is provided in support of the Motion for
    Relief from Stay (the "Motion") filed contemporaneously herewith.

2.  I make this affirmation based upon my review of the records with regard to this
    underlying loan transaction, which are kept in the ordinary course of business of PHH
    MORTGAGE CORPORATION. As part of my job responsibilities for PHH
    MORTGAGE CORPORATION, I have personal knowledge of and am familiar with the
    types of records maintained by PHH MORTGAGE CORPORATION in connection with
    the loan that is the subject of the Motion (the "Loan") and the procedures for creating
    those types of records, I have access to and have reviewed the books, records and files of
    PHH MORTGAGE CORPORATION that pertain to the Loan and extension of credit
    given to Debtors concerning the property securing such Loan.

3.  The information in this affidavit is taken from PHH MORTGAGE CORPORATION's
    business records regarding the Loan. The records are: (a) made at or near the time of the
    occurrence of the matters recorded by person with personal knowledge of the information
    in the business record, or from information transmitted by persons with personal
    knowledge; (b) kept in the course of PHH Mortgage Corporation's regularly conducted
    business activities; and (c) it is the regular practice of PHH MORTGAGE
    CORPORATION to make such records.

4.  Josette M Garrett and Readus D. Garrett have executed and delivered or are otherwise
    obligated with respect to that certain promissory note referenced in the Motion (the
    "Note"). Josette M Garrett and Readus D. Garrett have executed and delivered or are

otherwise obligated with respect to that certain Mortgage referenced in the Motion (the "Mortgage"). Pursuant to that certain Mortgage referenced in the Motion, all obligations of the Borrower(s) under and with respect to the Note and the Mortgage are secured by the property referenced in the Motion.

5. As of May 2, 2020, there are one or more defaults in paying Debtors' post-petition amounts due with respect to the Note.

6. As of May 2, 2020 the total unpaid principal balance is **$173,938.75** which includes the unpaid principal balance of **$128,705.39** and deferred principal balance of **$45,233.36**.

7. The monthly post-petition payment amount is $1,117.40. The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtors as of May 2, 2020:

| Number of Missed Payments | From: | To: | Monthly Missed Principal and Interest | Monthly Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 5 | 01/01/2020 | 05/01/2020 | $621.53 | $495.87 | $1,117.40 | $5,587.00 |
| Less post-petition partial payments (suspense balance): | | | | | | $95.88 |
| | | | | | Total: | $5,491.12 |

8. As of May 2, 2020, the total post-petition arrearage/delinquency is $5,491.12 consisting of (i) the foregoing total of missed post-petition payment in the amount of $5,491.12 plus (ii) the following post-petition fees:

| Description | Amount |
|---|---|
| N/A | N/A |

9. Attached hereto as Exhibit _A__ is a post-petition payment history.

10.     As of May 2, 2020, the debtor is in default for failure to make timely post-petition payments in the amount of $5,491.12.

11.     The pre-petition arrearage is $13,885.93 pursuant to the Proof of Claim filed by Movant. As of the date of this affidavit, the Chapter 13 plan **has** been confirmed.

Pursuant to 28 U.S.C. 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _25_ day of _JUNE_ , 20_20_

_____
Signature

_____Daniel Jean - Baptiste_____
Name

_____Contract Management Coordinator_____
Title

PHH MORTGAGE CORPORATION

STATE OF Florida

COUNTY OF Palm Beach

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization, this _25_ day of _June_ , 20 _20_ , by Daniel Jean-Baptiste as Contract Management Coordinator for PHH Mortgage Corporation, as Servicer for PHH MORTGAGE CORPORATION, who is <u>personally known to me</u> or who has produced _____ as identification.

_____
Signature of Notary Public
Name of Notary Public: _____Aaron Friedlander_____
Notary Commission Expiration Date: _____4/28/24_____

Personally known: _____✓_____
OR Produced Identification: _____
Type of Identification Produced: _____

AARON FRIEDLANDER
Notary Public - State of Florida
Commission # GG 967321
My Comm. Expires Apr 28, 2024
Bonded through National Notary Assn.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

836250
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for **PHH MORTGAGE CORPORATION**

In Re:

Josette M. Garrett
Readus D. Garrett

Case No:  17-21500 - ABA

Hearing Date: TBD
Judge:  Andrew B. Altenburg, Jr
Chapter:  13

## Exhibit A

| Name: | Josette M. Garrett | | | | | |
|---|---|---|---|---|---|---|
| **BK Case Number:** | 17-21500-ABA | | | | | |
| **Filing Date:** | 6/2/2017 | | | | | |
| **Post First Due:** | 7/1/2017 | | | | **Completed By:** | Ankith |
| **Post-Petition Due** | **Date Received** | **Amount Received** | **Amount Applied** | **Suspense Application** | **Suspense Balance** | **Comments** |
| | 7/14/2017 | $ 1,133.82 | | $ 1,133.82 | $ 1,133.82 | |
| | 8/15/2017 | $ 1,133.82 | | $ 1,133.82 | $ 2,267.64 | |
| 7/1/2017 | 9/5/2017 | | $ 1,091.64 | $ (1,091.64) | $ 1,176.00 | |
| 8/1/2017 | 9/5/2017 | | $ 1,091.64 | $ (1,091.64) | $ 84.36 | |
| | 9/14/2017 | $ 1,086.08 | | $ 1,086.08 | $ 1,170.44 | |
| 9/1/2017 | 9/15/2017 | | $ 1,086.08 | $ (1,086.08) | $ 84.36 | |
| | 10/13/2017 | $ 1,086.08 | | $ 1,086.08 | $ 1,170.44 | |
| 10/1/2017 | 10/17/2017 | | $ 1,086.08 | $ (1,086.08) | $ 84.36 | |
| 11/1/2017 | 11/14/2017 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 12/1/2017 | 12/14/2017 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 1/1/2018 | 1/12/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 2/1/2018 | 2/14/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 3/1/2018 | 3/9/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 4/1/2018 | 4/6/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 5/1/2018 | 5/14/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 6/1/2018 | 6/14/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 7/1/2018 | 7/20/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 8/1/2018 | 8/23/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 9/1/2018 | 9/20/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 10/1/2018 | 10/12/2018 | $ 1,086.08 | $ 1,086.08 | $ - | $ 84.36 | |
| 11/1/2018 | 11/15/2018 | $ 1,119.09 | $ 1,119.09 | $ - | $ 84.36 | |
| | 1/14/2019 | $ 2,238.18 | | $ 2,238.18 | $ 2,322.54 | |
| 12/1/2018 | 1/15/2019 | | $ 1,119.09 | $ (1,119.09) | $ 1,203.45 | |
| 1/1/2019 | 1/15/2019 | | $ 1,119.09 | $ (1,119.09) | $ 84.36 | |
| 2/1/2019 | 3/5/2019 | $ 1,119.09 | $ 1,119.09 | $ - | $ 84.36 | |
| | 4/11/2019 | $ 2,238.18 | | $ 2,238.18 | $ 2,322.54 | |
| 3/1/2019 | 4/12/2019 | | $ 1,119.09 | $ (1,119.09) | $ 1,203.45 | |
| 4/1/2019 | 4/12/2019 | | $ 1,119.09 | $ (1,119.09) | $ 84.36 | |
| 5/1/2019 | 5/21/2019 | $ 1,119.09 | $ 1,119.09 | $ - | $ 84.36 | |
| 6/1/2019 | 6/18/2019 | $ 1,119.09 | $ 1,119.09 | $ - | $ 84.36 | |
| | 12/31/2019 | $ 6,711.56 | | $ 6,711.56 | $ 6,795.92 | |
| 7/1/2019 | 1/2/2020 | | $ 1,119.09 | $ (1,119.09) | $ 5,676.83 | |
| 8/1/2019 | 1/2/2020 | | $ 1,119.09 | $ (1,119.09) | $ 4,557.74 | |
| 9/1/2019 | 1/2/2020 | | $ 1,119.09 | $ (1,119.09) | $ 3,438.65 | |
| 10/1/2019 | 1/2/2020 | | $ 1,119.09 | $ (1,119.09) | $ 2,319.56 | |
| 11/1/2019 | 1/2/2020 | | $ 1,119.09 | $ (1,119.09) | $ 1,200.47 | |
| 12/1/2019 | 1/2/2020 | | $ 1,119.09 | $ (1,119.09) | $ 81.38 | |
| | 5/1/2020 | $ 14.50 | | $ 14.50 | $ 95.88 | escrow adjusted |

| Name: | Josette M. Garrett | | | | |
|---|---|---|---|---|---|
| BK Case Number: | 17-21500-ABA | | | | |
| Filing Date: | 6/2/2017 | | | | |
| Completed by: | Ankith | | | | |
| Due Date | Total Payment | | Principal & Interest | | Escrow | NOPC Filed Date |
| 1/1/2020 | $ | 1,117.40 | $ | 621.53 | $ 495.87 | |
| 2/1/2020 | $ | 1,117.40 | $ | 621.53 | $ 495.87 | |
| 3/1/2020 | $ | 1,117.40 | $ | 621.53 | $ 495.87 | |
| 4/1/2020 | $ | 1,117.40 | $ | 621.53 | $ 495.87 | |
| 5/1/2020 | $ | 1,117.40 | $ | 621.53 | $ 495.87 | |
| Total Due | $ | 5,587.00 | $ | 3,107.65 | $2,479.35 | |

```
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1(b)

836250
PHELAN HALLINAN DIAMOND & JONES, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for PHH MORTGAGE CORPORATION
```

| | |
|---|---|
| In Re:<br><br>Josette M. Garrett<br>Readus D. Garrett | Case No: 17-21500 - ABA<br><br>Hearing Date: TBD<br><br>Judge: Andrew B. Altenburg, Jr<br><br>Chapter: 13 |

## CERTIFICATION OF CREDITOR REGARDING POST-PETITION PAYMENT HISTORY
## (NOTE AND MORTGAGE DATED 06/22/2007)

Daniel Jean-Baptiste, employed as Contract Management Coordinator by PHH

MORTGAGE CORPORATION, hereby certifies the following:

Recorded August 17, 2007 in BURLINGTON County, in Book MB11545, Page 644

Property Address: 36 STONEHAVEN LANE, WILLINGBORO, NJ 08046

Mortgage Holder: PHH MORTGAGE CORPORATION

Mortgagor(s)/Debtor(s): Josette M. Garrett, Readus D. Garrett

POST-PETITION PAYMENTS (Petition filed on 06/02/2017)

| Amount Due | Date Payment Was Due | How Payment Was Applied (Mo./Yr.) | Amount Received | Date Payment Received | Check or Money Order Number |
|---|---|---|---|---|---|
| - | - | Suspense | $1,133.82 | 07/14/2017 | - |
| - | - | Suspense | $1,133.82 | 08/15/2017 | - |
| $1,091.64 | 07/01/2017 | 07/17 | $1,091.64 from suspense | 09/05/2017 | - |
| $1,091.64 | 08/01/2017 | 08/17 | $1,091.64 from suspense | 09/05/2017 | - |

| - | - | Suspense | $1,086.08 | 09/14/2017 | - |
|---|---|---|---|---|---|
| $1,086.08 | 09/01/2017 | 09/17 | $1,086.08 from suspense | 09/15/2017 | - |
| | | Suspense | $1,086.08 | 10/13/2017 | - |
| $1,086.08 | 10/01/2017 | 10/17 | $1,086.08 from suspense | 10/17/2017 | - |
| $1,086.08 | 11/01/2017 | 11/17 | $1,086.08 | 11/14/2017 | - |
| $1,086.08 | 12/01/2017 | 12/17 | $1,086.08 | 12/14/2017 | - |
| $1,086.08 | 01/01/2018 | 01/18 | $1,086.08 | 01/12/2018 | - |
| $1,086.08 | 02/01/2018 | 02/18 | $1,086.08 | 02/14/2018 | - |
| $1,086.08 | 03/01/2018 | 03/18 | $1,086.08 | 03/09/2018 | - |
| $1,086.08 | 04/01/2018 | 04/18 | $1,086.08 | 04/06/2018 | - |
| $1,086.08 | 05/01/2018 | 05/18 | $1,086.08 | 05/14/2018 | - |
| $1,086.08 | 06/01/2018 | 06/18 | $1,086.08 | 06/14/2018 | - |
| $1,086.08 | 07/01/2018 | 07/18 | $1,086.08 | 07/20/2018 | - |
| $1,086.08 | 08/01/2018 | 08/18 | $1,086.08 | 08/23/2018 | - |
| $1,086.08 | 09/01/2018 | 09/18 | $1,086.08 | 09/20/2018 | - |
| $1,086.08 | 10/01/2018 | 10/18 | $1,086.08 | 10/12/2018 | - |
| $1,119.09 | 11/01/2018 | 11/18 | $1,119.09 | 11/15/2018 | - |
| | | Suspense | $2,238.18 | 01/14/2019 | - |
| $1,119.09 | 12/01/2018 | 12/18 | $1,119.09 from suspense | 01/15/2019 | - |
| $1,119.09 | 01/01/2019 | 01/19 | $1,119.09 from suspense | 01/15/2019 | - |
| $1,119.09 | 02/01/2019 | 02/19 | $1,119.09 | 03/05/2019 | - |
| | | Suspense | $2,238.18 | 04/11/2019 | - |
| $1,119.09 | 03/01/2019 | 03/19 | $1,119.09 from suspense | 04/12/2019 | - |
| $1,119.09 | 04/01/2019 | 04/19 | $1,119.09 from suspense | 04/12/2019 | - |
| $1,119.09 | 05/01/2019 | 05/19 | $1,119.09 | 05/21/2019 | - |
| $1,119.09 | 06/01/2019 | 06/19 | $1,119.09 | 06/18/2019 | - |
| | | Suspense | $6,711.56 | 12/31/2019 | - |
| $1,119.09 | 07/01/2019 | 07/19 | $1,119.09 from suspense | 01/02/2020 | - |
| $1,119.09 | 08/01/2019 | 08/19 | $1,119.09 from suspense | 01/02/2020 | - |

| | | | | | |
|---|---|---|---|---|---|
| $1,119.09 | 09/01/2019 | 9/19 | $1,119.09 from suspense | 01/02/2020 | - |
| $1,119.09 | 10/01/2019 | 10/19 | $1,119.09 from suspense | 01/02/2020 | - |
| $1,117.40 | 11/01/2019 | 11/19 | $1,119.09 from suspense | 01/02/2020 | - |
| $1,117.40 | 12/01/2019 | 12/19 | $1,119.09 from suspense | 01/02/2020 | - |
| Escrow Adjustment | | Suspense | $14.50 | 05/01/2020 | - |
| $1,117.40 | 01/01/2020 | - | $0.00 | - | - |
| $1,117.40 | 02/01/2020 | - | $0.00 | - | - |
| $1,117.40 | 03/01/2020 | - | $0.00 | - | - |
| $1,117.40 | 04/01/2020 | - | $0.00 | - | - |
| $1,117.40 | 05/01/2020 | - | $0.00 | - | - |
| TOTALS: $38,642.66 | | | $33,151.54 | | |

[Continue on attached sheets if necessary]

Monthly payments past due: 5 mos. x $1,117.40 (01/01/2020 through 05/01/2020) - $95.88 (Suspense) = $5,491.12 as of 05/02/2020

Each current monthly payment is comprised of:

| | | |
|---|---|---|
| Principal | ......... | $621.53[1] |
| Interest | ......... | Included in the above figure |
| R.E. Taxes | ......... | $0.00 |
| Insurance | ......... | $0.00 |
| Late Charge | ......... | $0.00 |
| Other | ......... | $495.87 (Specify: Escrow) |
| TOTAL | ......... | $1,117.40 |

If the monthly payment has changed during the pendency of the case, please explain (attach separate sheet(s) if necessary):

Payment Change due to Escrow Adjustment

Pre-petition arrears: Please see claim #8

---

[1]This figure is the combined total of P&I.

I certify under penalty of perjury that the above is true.

Date: _6/25/2020_

Signature

PHH MORTGAGE CORPORATION

**Daniel Jean-Baptiste** *Rev. 8/1/15*
**Contract Management Coordinator**

4




# NOTE

June 22, 2007                    **WILLINGBORO**                    **New Jersey**
[Date]                            [City]                            [State]

**36 STONEHAVEN LANE WILLINGBORO, NJ 08046**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **187,850.00**          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **PHH Mortgage Corporation d/b/a Coldwell Banker Mortgage**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          **7.106 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **01st**      day of each month beginning on **August 1st, 2007**        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 1st, 2037**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **3000 Leadenhall Road Mount Laurel, NJ 08054**
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1263.18**          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Josette M Garrett          -Borrower

_____ (Seal)
Readus D Garrett           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

_____
Rita calendo, Assistant Vice President
PHH Mortgage Corporation

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

*[Sign Original Only]*


# LOW DOWN PAYMENT MORTGAGE ADDENDUM TO NOTE

THIS LOW DOWN PAYMENT MORTGAGE ADDENDUM TO NOTE is made this 22nd day of June, 2007, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of PHH Mortgage Corporation d/b/a Coldwell Banker Mortgage ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a security instrument, as modified or amended, in favor of Lender dated the 22nd day of June, 2007 (the "Security Instrument"). (As in the Note, Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Note Holder.")

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Note Holder further covenant and agree as follows:

## 1.  LOW DOWN PAYMENT MORTGAGE RATE REDUCTION

Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Note Rate") until the full amount of principal has been paid. Note Holder agrees to decrease the Note Rate by 0.375 percentage point(s) on the earlier of (a) the First Cancellation Date or the Second Cancellation Date, provided that the conditions described in 1.A. or 1.B. below, as applicable, are satisfied; or (b) the Termination Date, provided that Borrower's monthly payments are current at that time.

### A.  First Cancellation Date
The "First Cancellation Date" is defined as the date that is the first monthly payment due date after Note Holder has verified that Borrower has satisfied all of the following requirements: (1) Borrower must request cancellation in writing; (2) the mortgage balance: (a) is first scheduled to reach 80% of the original property value; or (b) actually reaches 80% of the original property value; (3) Borrower has demonstrated a Good Payment History (as described below); and (4) the then-current value of the property is at least equal to the original property value. (For purposes of calculating original property value hereunder, Borrower's loan-to-value ratio at origination is 89.45 %. In addition, the then-current property value will be based on a new appraisal or broker's price opinion obtained by Note Holder and paid for by Borrower.)

For purposes of the First Cancellation Date, Borrower will have demonstrated a Good Payment History if Borrower has had neither (1) a payment thirty (30) days or more past due in the twelve (12) months preceding the payment due date immediately prior to the First Cancellation Date, nor (2) a payment sixty (60) days or more past due in the twenty-four (24) months preceding the payment due date immediately prior to the First Cancellation Date. If Borrower has had the mortgage loan for less than twenty-four (24) months, this payment history requirement will be based on the length of time Borrower has had the mortgage loan.

### B.  Second Cancellation Date
The "Second Cancellation Date" is defined as the date that is the first monthly payment due date after Note Holder has verified that Borrower has satisfied all of the following requirements: (1) Borrower must request cancellation in writing; (2) the mortgage balance must be paid down to a point that it,: (a) if within 2 to 5 years of the date of this document, reaches 75% of the current property value, or (b) if after 5 years of the date of this document, reaches 80% of the current property value (current

MULTISTATE LOW DOWN PAYMENT MORTGAGE ADDENDUM TO NOTE

# COPY

property value to be based on a new appraisal obtained by Note Holder and paid for by Borrower); and (3) the loan must have at least a twenty-four (24) month history.

For purposes of the Second Cancellation Date, the Borrower will have demonstrated a Good Payment History if the Borrower has had neither (1) a payment thirty (30) days or more past due in the twelve (12) months preceding the payment due date immediately prior to the Second Cancellation Date, nor (2) a payment sixty (60) days or more past due in the twenty-four (24) months preceding the payment due date immediately prior to the Second Cancellation Date.

## C.   Termination Date

The "Termination Date" is defined as the earlier of: (1) the date that the mortgage balance is first scheduled to reach 78% of the original value of the property; or (2) the first day of the month after the date that is the mid-point of the original mortgage amortization period.

For purposes of the Termination Date, the Borrower's monthly payments will be deemed to be current if the payment due in the month before the Termination Date, all prior monthly payments, and any outstanding late charges have been paid by the end of the month before the Termination Date.  If the Borrower's monthly payments are not current on the Termination Date, the rate will be reduced thereafter on the first payment due date following the date on which Borrower's monthly payments become current.

## D.   New Payment Amount

If and when the Note Rate is reduced as described above, Note Holder will advise Borrower (1) of the amount of the new monthly payment that would be sufficient to repay the unpaid principal Borrower will owe on the date the Note Rate is reduced, in full on the maturity date at Borrower's new Note Rate in substantially equal payments (the result of the calculation will be Borrower's "New Payment Amount"); and (2) the date on which the New Payment Amount is to commence, which shall be the next payment due date after the First Cancellation Date, the Second Cancellation Date, or the Termination Date, as applicable.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Low Down Payment Mortgage Addendum to Note.

_____     (Seal)
Josette M Garrett                                              -Borrower

_____     (Seal)
Readus D Garrett                                              -Borrower

**MULTISTATE LOW DOWN PAYMENT MORTGAGE ADDENDUM TO NOTE**

# SIGNATURE/NAME AFFIDAVIT

**DATE: June 22, 2007**

**LOAN #** ███████████

**BORROWER: Josette M Garrett, Readus D Garrett**

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

Josette M Garrett
_____          _____
(Print or Type Name)                                 Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____          _____
(Print or Type Name)                                 Signature

_____          _____
(Print or Type Name)                                 Signature

_____          _____
(Print or Type Name)                                 Signature

_____          _____
(Print or Type Name)                                 Signature

and that

                                                              are one

and the same person.

State/Commonwealth of **NJ**
County/Parish of **BURLINGTON**

Subscribed and sworn (affirmed) before me
this **22nd**                     day of **June**                     , 2007

_____
Notary Public in and for
the State/Commonwealth of **NJ**
County/Parish of **BURLINGTON**
My Commission Expires:

**VMP**-304 (0103) 01          VMP Mortgage Solutions (800)521-7291          **DANIELLE MARINELLI**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 11/21/2008**          3/01



# COPY

## SIGNATURE/NAME AFFIDAVIT

**DATE:** June 22, 2007

**LOAN #:** ███████████

**BORROWER:** Josette M Garrett, Readus D Garrett

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must <u>exactly</u> match signatures on the Note and Mortgage or Deed of Trust.)

**Readus D Garrett**

_____
(Print or Type Name)

_____
Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____
(Print or Type Name)

_____
Signature

_____
(Print or Type Name)

_____
Signature

_____
(Print or Type Name)

_____
Signature

_____
(Print or Type Name)

_____
Signature

and that

and the same person.

are one

State/Commonwealth of NJ
County/Parish of BURLINGTON

Subscribed and sworn (affirmed) before me
this 22nd                    day of  June                    , 2007

_____
Notary Public in and for
the State/Commonwealth of NJ
County/Parish of BURLINGTON
My Commission Expires:

VMP-304 (0103) 01

VMP Mortgage Solutions (800)521-7291

**DANIELLE MARINELLI**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 11/21/2008**

3/01

6/21/2007 9 17 AM

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

Prepared By:
Justine Stahl, PHH Mortgage
Corporation d/b/a Coldwell
3000 Leadenhall Road Mount
Laurel, NJ 08054

BURLINGTON COUNTY
CLERK

2001 AUG 16 A 9: 11

RECEIVED

————————————————[Space Above This Line For Recording Data]————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 22, 2007
together with all Riders to this document.
(B) "Borrower" is Josette M Garrett and Readus D Garrett, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3031 1/01

VMP ®-6A(NJ)
Page 1 of 15          Initials:

VMP MORTGAGE FORMS -

MB 1 1 5 4 5 PG 6 4 4

(D) "Lender" is PHH Mortgage Corporation d/b/a Coldwell Banker Mortgage

Lender is a Corporation
organized and existing under the laws of New Jersey
Lender's address is 3000 Leadenhall Road Mount Laurel, NJ 08054

(E) "Note" means the promissory note signed by Borrower and dated June 22, 2007
The Note states that Borrower owes Lender One Hundred Eighty-Seven Thousand Eight
Hundred Fifty Dollars and Zero Cents                                    Dollars
(U.S. $187,850.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1st, 2037 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Low Down Payment Mortgage Rider to Security Instrument.

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

Form 3031 1/01

Initials

VMP®

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the **COUNTY** of **BURLINGTON** :

[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]

*See attached Legal Description*

Property Account Number:
**36 STONEHAVEN LANE**
**WILLINGBORO**
("Property Address"):

which currently has the address of
[Street]
[City], New Jersey 08046    [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

-6A(NJ)

Page 3 of 15

Initials:

Form 3031 1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

MB 1 1 5 4 5 PG 6 4 8

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

MB 1 1 5 4 5 P6 b 4 9

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(NJ)

Initials

Form 3031 1/01

MB11545PG650

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

MB11545PG651

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(NJ)

Initials

Form 3031 1/01

MB I I 545 PG 652

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MB 1 1 5 4 5 PG 6 5 3

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

MB 1 1 5 4 5 PG 6 5 4

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MB11545P6655

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

MB 11545 PG 656

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____

_____ (Seal)
Josette M Garrett                          -Borrower

_____

_____ (Seal)
Readus D Garrett                          -Borrower

_____ (Seal)            _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)            _____ (Seal)
-Borrower                                        Borrower

_____ (Seal)            _____ (Seal)
-Borrower                                        -Borrower



**STATE OF NEW JERSEY, BURLINGTON**          County ss:

On this 22nd          day of June, 2007                    , before me, the subscriber, personally appeared Josette M Garrett, Readus D Garrett

who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

*Danielle Marinelli*
_____
Notary Public

DANIELLE MARINELLI
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 11/21/2008

Initials:

-6A(NJ)          Form 3031 1/01

MB11545PG658

# LOW DOWN PAYMENT MORTGAGE RIDER TO SECURITY INSTRUMENT

THIS LOW DOWN PAYMENT MORTGAGE RIDER TO SECURITY INSTRUMENT is made this 22nd day of June, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to PHH Mortgage Corporation d/b/a Coldwell Banker Mortgage ("Lender") covering the Property described in the Security instrument and located at:

36 STONEHAVEN LANE WILLINGBORO, NJ 08046

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. LOW DOWN PAYMENT MORTGAGE RATE REDUCTION
The Note provides for the reduction in the Borrower's interest rate as follows:

### 1. LOW DOWN PAYMENT MORTGAGE RATE REDUCTION
Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Note Rate") until the full amount of principal has been paid. Note Holder agrees to decrease the Note Rate by 0.375 percentage point(s) on the earlier of (a) the First Cancellation Date or the Second Cancellation Date, provided that the conditions described in 1.A or 1.B below, as applicable, are satisfied; or (b) the Termination Date, provided that Borrower's monthly payments are current at that time.

#### A. First Cancellation Date
The "First Cancellation Date" is defined as the date that is the first monthly payment due date after Note Holder has verified that Borrower has satisfied all of the following requirements: (1) Borrower must request cancellation in writing; (2) the mortgage balance: (a) is first scheduled to reach 80% of the original property value; or (b) actually reaches 80% of the original property value; (3) Borrower has demonstrated a Good Payment History (as described below); and (4) the then-current value of the property is at least equal to the original property value. (For purposes of calculating original property value hereunder, Borrower's loan-to-value ratio at origination is 89.45%. In addition, the then-current property value will be based on a new appraisal or broker's price opinion obtained by Note Holder and paid for by Borrower.)

For purposes of the First Cancellation Date, Borrower will have demonstrated a Good Payment History if the Borrower has had neither (1) a payment thirty (30) days or more past due in the twelve (12) months preceding the payment due date immediately prior or the First Cancellation Date, nor (2) a payment sixty (60) days or more past due in the twenty-four (24) months preceding the payment due date immediately prior to the First Cancellation Date. If Borrower has had the mortgage loan for less than twenty-four (24) months, this payment history requirement will be based on the length of time Borrower has had the mortgage loan.

MB 1 1 5 4 5 PG 6 5 9

**B.    Second Cancellation Date**

The "Second Cancellation Date" is defined as the date that is the first monthly payment due date after Note Holder has verified that Borrower has satisfied all of the following requirements: (1) Borrower must request cancellation in writing; (2) the mortgage balance must be paid down to a point that it,: (a) if within 2 to 5 years of the date of this document, reaches 75% of the current property value, or (b) if after 5 years of the date of this document, reaches 80% of the current property value (current property value to be based on a new appraisal obtained by Note Holder and paid for by Borrower); and (3) the loan must have at least a twenty-four (24) month history.

For purposes of the Second Cancellation Date, the Borrower will have demonstrated a Good Payment History if the Borrower has had neither (1) a payment thirty (30) days or more past due in the twelve (12) months preceding the payment due date immediately prior to the Second Cancellation Date, nor (2) a payment sixty (60) days or more past due in the twenty-four (24) months preceding the payment due date immediately prior to the Second Cancellation Date.

**C.    Termination Date**

The "Termination Date" is defined as the earlier of: (1) the date that the mortgage balance is first scheduled to reach 78% of the original value of the property; or (2) the first day of the month after the date that is the mid-point of the original mortgage amortization period.

For purposes of the Termination Date, the Borrower's monthly payments will be deemed to be current if the payment due in the month before the Termination Date, all prior monthly payments, and any outstanding late charges have been paid by the end of the month before the Termination Date. If the Borrower's monthly payments are not current on the Termination Date, the rate will be reduced thereafter on the first payment due date following the date on which Borrower's monthly payments become current.

**D.    New Payment Amount**

If and when the Note Rate is reduced as described above, Note Holder will advise Borrower (1) of the amount of the new monthly payment that would be sufficient to repay the unpaid principal Borrower will owe on the date the Note Rate is reduced, in full on the maturity date at Borrower's new Note Rate in substantially equal payments (the result of the calculation will be Borrower's New Payment Amount"); and (2) the date on which the New Payment Amount is to commence, which shall be the next payment due date after the First Cancellation Date, the Second Cancellation Date, or the Termination Date, as applicable.

**MULTISTATE LOW DOWN PAYMENT MORTGAGE RIDER TO SECURITY INSTRUMENT**

MB 1 1 5 4 5 PG 6 6 0

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Low Down Payment Mortgage Rider to Security Instrument.

_____ (Seal)
Josette M Garrett                                    -Borrower

_____ (Seal)
Readus D Garrett                                     -Borrower

**MULTISTATE LOW DOWN PAYMENT MORTGAGE RIDER TO SECURITY INSTRUMENT**

MB11545PG661

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF NJ, COUNTY OF BURLINGTON, CITY OF WILLINGBORO AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF STONEHAVEN LANE (50 FEET WIDE) AT A POINT DISTANT 367.31 FEET EASTWARDLY FROM THE EASTERLY LINE OF STIRRUP LANE, WHICH SAID BEGINNING POINT IS IN THE DIVISION LINE BETWEEN LOTS 5 AND 6; THENCE

(1) ALONG STONEHAVEN LANE, NORTH 82 DEG 30 MIN 25 SEC EAST, A DISTANCE OF 65.00 FEET TO A POINT; THENCE

(2) ALONG LOT 7, SOUTH 07 DEG 29 MIN 35 SEC EAST, A DISTANCE OF 100.00 FEET TO A POINT IN THE NORTHERLY LINE OF A 10 FOOT WIDE SANITARY SEWER EASEMENT; THENCE

(3) SOUTH 82 DEG 30 MIN 25 SEC WEST, A DISTANCE OF 65.00 FEET TO A POINT; THENCE

(4) NORTH 07 DEG 29 MIN 35 SEC WEST, A DISTANCE OF 100.00 FEET TO THE PLACE OF BEGINNING.

BEING KNOWN AS LOT 6, BLOCK 122, SUBDIVISION MAP OF SOMERSET PARK, SECTION 5, FILED NOVEMBER 21, 1957 AS MAP NO. 3413.

BEING ALSO KNOWN AS LOT 6 IN BLOCK 122 ON THE TAX MAP OF THE TOWNSHIP OF WILLINGBORO.

FOR INFORMATION ONLY:

Property Address: 36 Stonehaven Lane, WILLINGBORO, NJ 08046

MB 1 1 5 4 5 PG 6 6 2

# RECORDING DATA PAGE

```
Consideration :
Code          :
Transfer Fee  :
Recording Date: 08/17/2007
Document No   :              ccbunn

US RECORDINGS INC
2925 COUNTRY DRIVE
SAINT PAUL, MN  55117


Receipt No    :
Document No   :
Document Type : MTG
Recording Date: 08/17/2007
Login Id      : ccbunn

        Recorded
   Aug 17 2007 09:16am
 Burlington County Clerk
```

**Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060**

After Recording Return To:
Mortgage Services
PO Box 5449
Mount Laurel, NJ 08054
Return to Phone: 877-766-8244

This Document Prepared By:
CHARLTON STANTON, SPECIALIST

_____

PHH Mortgage Corporation
PO Box 5449
Mount Laurel, NJ 08054

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: **August 17, 2007**
Original Loan Amount: **$187,850.00**
Original Lender Name: PHH **MORTGAGE**
**CORPORATION D/B/A COLDWELL BANKER**
**MORTGAGE**
New Money: **$7,384.49**

Prepared Date: March 31, 2014

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 28th day of March, 2014, between **JOSETTE M GARRETT AND READUS D GARRETT, WIFE AND HUSBAND** ("Borrower") and **PHH MORTGAGE CORPORATION D/B/A COLDWELL BANKER MORTGAGE, whose address is 1 Mortgage Way, Mt Laurel, NJ 08054** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **June 22, 2007** and recorded in **Book/Liber 11545**, Page **644**, Instrument No: **4477289**, of the **Official Records (Name of Records) of Burlington County, NJ (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**36 STONEHAVEN LN, WILLINGBORO, NJ 08046,**
(Property Address)

the real property described being set forth as follows:

**SEE ATTACHED EXHIBIT A**

**QUIT CLAIM DEED. -REC: 08/17/2007 BK: DB6512 PG: 881 INSTR #**

**Tax Parcel No.:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **May 1, 2014**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$181,048.36**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. **$45,233.36** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$135,815.00**. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.625%**, from **May 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$621.53**, beginning on the **1st** day of **June, 2014**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.625%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be **May 1, 2054**.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.  Borrower understands and agrees that:

    (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(g)    Borrower authorizes Lender, and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

[ ] By checking this box, Borrower also consents to being contacted by text messaging

8.    This Agreement modifies an obligation secured by an existing security instrument recorded in Burlington County, NJ, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $173,663.87. The principal balance secured by the existing security instrument as a result of this Agreement is $181,048.36, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**JOSETTE M GARRETT** -Borrower

_____ (Seal)
**READUS D GARRETT** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of New Jersey

County of _Burlington_  ss

I certify that on this ___4th___ day of ___April___, 20_14_, **JOSETTE M GARRETT AND READUS D GARRETT, WIFE AND HUSBAND,** personally came before me, a Notary Public and acknowledged under oath, to my satisfaction, the he (she) is named in and personally signed this document; and delivered this document as his (her) act and deed.

*Jacqueline E. Patterson*
NOTARY PUBLIC

My commission expires : _Jan. 9, 2019_

Jacqueline E. Patterson
Notary Public-State of N.J.
Exp. Jan 9,2019

Origination Company: **PHH MORTGAGE CORPORATION D/B/A COLDWELL BANKER MORTGAGE**
NMLSR ID:

**PHH MORTGAGE CORPORATION D/B/A COLDWELL BANKER MORTGAGE**

By: _____ (Seal) - Lender
Name:
Title:                          **JOSHUA DAWSON, ASST. V.P.**

_____ 5/14/2014 _____
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

State of New Jersey, County of Burlington

On _____ 5/14/2 _____, 20/4, before me, _____ **DONNA M. WALKER** _____,
                                                    (please print name)

a Notary Public in and for said State, personally appeared

**JOSHUA DAWSON, ASST. V.P.** _____ of the

Corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their capacity, and that by their signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

                                        Donna M. Walker
                                        Notary Public of New Jersey
_____         My Commission Expires 1/15/2019
Notary Public of New Jersey
My Commission expires: _____

_____

Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title:                    **CANDACE GALLARDO, ASST. SECRETARY**

_____

Name

_____

Title
Date of Signature: __5/16/2014__
                        [Space Below This Line For Acknowledgments] _____

State of New Jersey, County of Burlington SS.:

I CERTIFY that on __5/16/2014__

**CANDACE GALLARDO, ASST. SECRETARY**
_____

Personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as _____ **CANDACE GALLARDO, ASST. SECRETARY**

of _____ **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** the entity named in this instrument; and;
(c) executed this instrument as the act of the entity named in this instrument.

_____
(Print name and title below signature)

Donna M. Walker                    __5/16/2014__
Notary Public of New Jersey              Date
My Commission Expires 1/15/2019

**THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF NJ, COUNTY OF BURLINGTON, CITY OF WILLINGBORO AND DESCRIBED AS FOLLOWS:**

**BEGINNING AT A POINT IN THE SOUTHERLY LINE OF STONEHAVEN LANE (50 FEET WIDE) AT A POINT DISTANT 367.31 FEET EASTWARDLY FROM THE EASTERLY LINE OF STIRRUP LANE, WHICH SAID BEGINNING POINT IS IN THE DIVISION LINE BETWEEN LOTS 5 AND 6; THENCE**

**(1) ALONG STONEHAVEN LANE, NORTH 82 DEG 30 MIN 25 SEC EAST, A DISTANCE OF 65.00 FEET TO A POINT; THENCE**

**(2) ALONG LOT 7, SOUTH 07 DEG 29 MIN 35 SEC EAST, A DISTANCE OF 100.00 FEET TO A POINT IN THE NORTHERLY LINE OF A 10 FOOT WIDE SANITARY SEWER EASEMENT; THENCE**

**(3) SOUTH 82 DEG 30 MIN 25 SEC WEST, A DISTANCE OF 65.00 FEET TO A POINT; THENCE**

**(4) NORTH 07 DEG 29 MIN 35 SEC WEST, A DISTANCE OF 100.00 FEET TO THE PLACE OF BEGINNING.**

**BEING KNOWN AS LOT 6, BLOCK 122, SUBDIVISION MAP OF SOMERSET PARK, SECTION 5, FILED NOVEMBER 21, 1957 AS MAP NO. 3413.**

**BEING ALSO KNOWN AS LOT 6 IN BLOCK 122 ON THE TAX MAP OF THE TOWNSHIP OF WILLINGBORO.**

Recording Requested By
PHH Mortgage Corporation (PHHM)

When Recorded Return To

Legal Entity Review Department
PHH Mortgage Corporation (PHHM)
1760 WEHRLE DRIVE
WILLIAMSVILLE, NY 14221

---

## CORPORATE ASSIGNMENT OF MORTGAGE

**Burlington, New Jersey**
**SELLER'S SERVICING #**     "GARRETT"

Date of Assignment December 14th, 2016
Assignor MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR PHH MORTGAGE
CORPORATION D/B/A COLDWELL BANKER MORTGAGE, ITS SUCCESSORS AND ASSIGNS at P.O BOX 2026,
FLINT, MI 48501-2026
Assignee PHH MORTGAGE CORPORATION at 1 MORTGAGE WAY, MT LAUREL, NJ 08054

Executed By JOSETTE M GARRETT AND READUS D GARRETT, WIFE AND HUSBAND To MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR PHH MORTGAGE CORPORATION D/B/A
COLDWELL BANKER MORTGAGE, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage 06/22/2007 Recorded· 08/16/2007 in Book/Reel/Liber. 11545 Page/Folio. 644 as Instrument
No · 4477289 In the County of Burlington, State of New Jersey

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $187,850 00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR PHH MORTGAGE
CORPORATION D/B/A COLDWELL BANKER MORTGAGE, ITS SUCCESSORS AND ASSIGNS
On December 14th, 2016

By
JACQUELINE WATKINS, Assistant Secretary

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
CORPORATE SEAL 1999 DELAWARE

STATE OF New York
COUNTY OF Ene

On the 14th day of December in the year 2016 before me, the undersigned Notary Public in and for said State, personally appeared JACQUELINE WATKINS, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,

REGINALD BRUNDAGE
Notary Expires· 04/15/2017  #01BR6279617
Qualified in Ene County

| RECORDING INFORMATION SHEET | | 49 RANCOCAS RD,<br>MT HOLLY, NJ 08060 |
|---|---|---|

| INSTRUMENT NUMBER:<br><br>5269228 | DOCUMENT TYPE:<br><br>## ASSIGNMENT OF MORTGAGE |
|---|---|

**Official Use Only**

| | |
|---|---|
| **Document Charge Type** | ASSIGNMENT OF MORTGAGE |

**Return Address** *(for recorded documents)*
LLC SIMPLIFILE
4844 NORTH 300 WEST
PROVO UT 84604

TIMOTHY D. TYLER
BURLINGTON COUNTY

RECEIPT NUMBER

RECORDED ON
December 30, 2016 10:40 AM

INSTRUMENT NUMBER
5269228

## BOOK: OR13256
## PAGE: 6628

| | |
|---|---|
| **No. Of Pages**<br>*(Excluding Recording Information and/or Summary Sheet)* | 2 |
| **Consideration Amount** | $0.00 |
| **Recording Fee** | $50.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $50.00 |
| **Municipality** | UNKNOWN |
| **Parcel Information** | **Block:** N/A<br><br>**Lot:** N/A |
| **First Party Name** | MORTGAGE ELEC REGISTRATION SYSTEMS INC |
| **Second Party Name** | PHH MTG CORP |

**Additional Information (Official Use Only)**

Ctrl Id·          Recording Clerk: nsmith

**************************** *DO NOT REMOVE THIS PAGE.*****************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
******************* *RETAIN THIS PAGE FOR FUTURE REFERENCE.*********************

Book # OR 13256 Page # 6628 Inst. # 5269228



# Burlington County Document Summary Sheet

| | |
|---|---|
| | **Transaction Identification Number** |
| BURLINGTON COUNTY CLERK | **Recorded Document to be Returned by Submitter to:** |
| 49 RANCOCAS RD | PHH MORTGAGE 4 |
| MOUNT HOLLY NJ 08060 1317 | 1 MORTGAGE WAY |
| | MOUNT LAUREL, NJ 08054 |

| **Official Use Only** | | |
|---|---|---|
| | **Submission Date** *(mm/dd/yyyy)* | 12/16/2016 |
| | **No. of Pages** *(excluding Summary Sheet)* | 2 |
| | **Recording Fee** *(excluding transfer tax)* | $50.00 |
| | **Realty Transfer Tax** | $0.00 |
| | **Total Amount** | $50.00 |
| | **Document Type** ASSIGNMENT OF MORTGAGE | |
| | **Electronic Recordation Level** L2 - Level 2 (With Images) | |
| | **Municipal Codes** WILLINGBORO TWP | 38 |
| | **Bar Code(s)** | |

| **Additional Information (Official Use Only)** |
|---|
| |

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



# Burlington County Document Summary Sheet

| | |
|---|---|
| **Type** | ASSIGNMENT OF MORTGAGE |
| **Consideration** | |
| **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) |
| **Document Date** | 12/14 2016 |

**ASSIGNMENT OF MORTGAGE**

**Reference Info**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| OR | 11545 | 644 | 4477289 | |

| ASSIGNOR | Name | Address |
|---|---|---|
| | JOSETTE M GARRETT | |
| | READUS D GARRETT | |

| ASSIGNEE | Name | Address |
|---|---|---|
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR PHH MORT | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

***\* DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***